## Commonwealth v. Lesher

*Russell Brownback* and *Roger B. Reynolds*, for Commonwealth.

*Wisler, Pearlstine, Talone & Gerber*, for defendant.

KNIGHT, P. J., February 8, 1956.—Defendant was charged with a violation of an ordinance of West Norriton Township. He was given a hearing before a justice of the peace, found "not guilty" by the justice and discharged. The officials of West Norriton in the name of the Commonwealth then obtained a rule to show cause why an appeal to this court should not be allowed, an answer was filed and the case argued before the argument court.

From the transcript of the justice of the peace and the admitted averments of the petition for appeal we gather the following facts: On October 19, 1954, the commissioners of West Norriton Township enacted ordinance 155, the second section of which provides: "No person, partnership, firm or corporation shall use or rent for human habitation or occupancy any structure in West Norriton Township which contains no approved sanitary facilities therein or appurtenant thereto for the disposal of sanitary sewage."

Defendant owns land fronting on Ridge Pike in the township on which are erected three buildings; one is an office building used by defendant, it contains three rooms in which are desks, chairs and filing cases; a second building is used by defendant for storage; the third building is rented and used as an office for a used car dealer. The facilities of the West Norriton Township Municipal Authority are available for use by the above buildings. Defendant does not have any regular clerical employe in his office, but his wife is there several hours a day doing clerical work. His workmen use the office as a headquarters where they pick up tools and equipment before going to their respective jobs. No one lives in any of the three buildings and there are no sanitary sewage facilities in any of them.

On August 2, 1955, defendant was notified by registered letter by the secretary of the township to in-

stall sanitary sewage facilities in the above buildings within 30 days. The notice was not complied with and a warrant for defendant was issued on October 31, 1955, charging him with a violation of ordinance 155. Defendant was given a hearing before the justice of the peace, George C. Rittenhouse, on November 5, and testimony was taken. After the hearing the justice of the peace found defendant "not guilty", assigning as his reasons for the finding: "There is no human habitation or occupancy, that there are no employees occupying the building in question and no evidence of unsanitary conditons was produced."

In his answer to the petition for leave to appeal defendant challenges the constitutionality of ordinance 155 declaring it is "vague, arbitrary, and capricious, therefore constituting an illegal exercise of police power." This averment alone is sufficient to justify an appeal for it raises a disputed question of law upon which the justice of the peace was not qualified to pass.

The question in this case revolves around the meaning to be given the word "occupancy" as used in the ordinance. In common everyday speech we say that a building is "occupied" in order to distinguish it from a building that is "vacant". No one would say that defendant's buildings were vacant as that word is commonly understood. We are of the opinion that the justice of the peace either treated the words "habitation" and "occupancy" as synonymous or he gave to the word "occupancy" a very narrow and restricted meaning.

According to the Universal Reference Library the meaning of the word "occupancy" is: "The act of dwelling in or of taking and holding in possession."

Surely ordinance 155 was designed to cover more than dwelling houses; a restaurant, a service station or a taproom has just as much need of sanitary sewage facilities as any dwelling.

The question before the justice of the peace was the interpretation of ordinance 155. This was a mixed question of fact and law and, therefore, a proper case for appeal to this court.

Since the case must be heard de novo by this court, we will refrain from further comment on the merits.

And now, February 8, 1956, the rule is made absolute and an appeal granted.